Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| ELIÉZER SANTANA BÁEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACION<br><br>Recurrida | KLRA202500225 | Revisión Judicial Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: B7-22233<br><br>Sobre: Reclasificación de Custodia |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de mayo de 2025.

El 15 de abril de 2025, el Sr. Eliezer Santana Báez (en adelante, señor Santana o el recurrente) presentó ante nos una *Petición de Revisión Judicial*. Mediante dicho escrito, nos solicita la revisión y revocación de la *Resolución* emitida por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (en adelante, CCT o parte recurrida). Mediante el aludido dictamen, la CCT reclasificó su nivel de custodia de mínima a máxima.

Examinado el recurso, la postura de la Oficina del Procurador General, así como los documentos que acompañaron ambos escritos, al amparo de las disposiciones legales aplicables que más adelante exponemos, resolvemos **confirmar** la determinación recurrida.

I.

Surge del legajo apelativo que, el señor Santana se encuentra confinado en la Institución Bayamón 501, donde extingue una sentencia. El 27 de agosto de 2024, el CCT se reunió para evaluar el plan institucional del recurrente, así como su nivel de custodia. Evaluado el expediente, el CCT

emitió su *Evaluación Plan Institucional* en la cual reclasificó al señor Santana a nivel de custodia mínima.

Así las cosas, el 11 de marzo de 2025, el CCT se reunió nuevamente para evaluar el plan institucional del señor Santana, así como su nivel de custodia. Evaluado dicho expediente, el CCT emitió su *Resolución* en la cual reclasificó al recurrente a nivel de custodia máxima. Al así hacerlo, emitió diecinueve (19) determinaciones de hechos. Nos parece importante destacar la última de estas, en las que se determinó lo siguiente:

- El 1 de enero de 2025 le radicaron querella 215-25-001 por utilización del correo o de la correspondencia para propósitos ilícitos o su tentativa. El 4 de marzo de 2025 fue la vista y salió incurso.

Acto seguido, la CTT estableció que, por desobediencia a las normas y reglas de la institución, el recurrente fue encontrado incurso en una querella de Nivel I por violación al Código 147- utilización del correo o de la correspondencia para propósitos ilícitos o su tentativa. A su vez, enfatizó que, el señor Santana tuvo la oportunidad de estar en una custodia mínima, más no aprovechó dicho privilegio y que su participación en programas y tratamientos no ha ido acorde con sus ajustes institucionales. Por todo esto, acordó reclasificar al recurrente de custodia mínima a custodia máxima.

En desacuerdo, el 24 de marzo de 2025, el señor Santana presentó una *Solicitud de Reconsideración*. En esencia, argumentó que, la puntuación de la escala de reclasificación de custodia de participación en programas y tratamiento era incorrecta. Específicamente, manifestó que había completado programas vocacionales o tratamientos, por lo que correspondía la puntuación de -2 en dicha escala. Atendida la reconsideración, el 27 de marzo de 2025, el CCT mantuvo la clasificación de custodia máxima.

Aun en desacuerdo, el 15 de abril de 2025, el señor Santana recurrió ante nos mediante el recurso de epígrafe y señaló la comisión del siguiente error por parte del CCT:

Erró el CCT del DCR al extralimitarse de su propia reglamentación y sin jurisdicción para reclasificarme, me reclasificaron comoquiera y se fueron por encima de lo acordado en Morales Feliciano categoría 3 (37-40).

El 30 de abril de 2025, emitimos una *Resolución* concediéndole quince (15) días al Departamento para que presentara su alegato. En cumplimiento con lo anterior, el 22 de mayo de 2025, el Departamento compareció ante nos mediante su *Escrito en Cumplimiento de Resolución*.

Así, con el beneficio de la comparecencia de las partes, procedemos a resolver.

II.

**-A-**

Es norma hartamente conocida y reiterada en nuestro ordenamiento jurídico que los foros apelativos deben conceder amplia deferencia a las decisiones administrativas debido a la experiencia y pericia que estos organismos, presumiblemente tienen respecto a las facultades que se les han delegado. Otero Rivera v. Bella Retail Group, Inc., 2024 TSPR 70, 214 DPR ____, al citar a Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019) y Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).[1]

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq.* A tales efectos, la Sección 4.1 de la LPAU dispone sobre la revisión judicial que las disposiciones de dicha ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas

---

[1] Reconocemos que recientemente el Tribunal Supremo Federal emitió una decisión en la que cuestionó gran parte de la jurisprudencia que dirige el proceso de revisión judicial que efectúan los tribunales sobre las decisiones administrativas. Particularmente, en cuanto a la deferencia que estas merecen al interpretar un estatuto ambiguo. Véase Loper Bright Enterprises et al., v. Raimondo, 603 US ____ (2024), 144 S. Ct. 2444. No obstante, es nuestro parecer que las circunstancias particulares del caso ante nuestra consideración no requieren que profundicemos sobre los fundamentos consignados en la mencionada decisión.

finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión.[2]

Asimismo, la Sección 4.2 de la LPAU establece que la parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final.[3]

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Voilí Voilá Corp. v. Mun. Guaynabo, 213 DPR 743 (2024), al citar a Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998, 1015 (2008). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Íd.*, al citar a Otero v. Toyota, 163 DPR 716, 729 (2005). Ello así, puesto a que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección por su vasta experiencia y conocimiento especializado y, conforme ya citamos, merecen deferencia por parte de los foros judiciales. Otero Rivera v. Bella Retail, Group, et al., *supra*.

**-B-**

El Artículo VI, Sección 19, de la Constitución del Estado Libre Asociado de Puerto Rico, establece como política pública el deber del

---

[2] 3 LPRA Sec. 9671
[3] 3 LPRA Sec. 9672.

Estado de reglamentar las instituciones penales, para que estas sirvan a sus propósitos y conduzcan a la rehabilitación moral y social de las personas confinadas en ellas. A tales fines, el Artículo 5 del Plan de Reorganización Núm. 2-2011, le confirió al Departamento de Corrección y Rehabilitación (Departamento) la facultad de realizar la clasificación adecuada y revisión continua de la clientela, conforme a los ajustes y cambios de ésta. A tenor con esta autoridad conferida, la clasificación de los confinados se rige por el *Manual para Crear y Definir Funciones del Comité De Clasificación Y Tratamiento en las Instituciones Correccionales,* Núm. 8523 de 26 de septiembre de 2014 (Manual Núm. 8523), y el *Manual para la Clasificación de los Confinados,* Núm. 9151 de 22 de enero de 2020 (Manual Núm. 9151).

Particularmente, el Manual Núm. 9151 establece, en su parte introductoria, que el método de clasificación de los confinados es el eje central de una administración eficiente y un sistema correccional eficaz. Asimismo, añade que "[…] la clasificación de los confinados consiste en la separación sistemática y evolutiva de éstos en subgrupos, en virtud de las necesidades de cada individuo, y las exigencias y necesidades de la sociedad, desde la fecha de ingreso del confinado hasta la fecha de su excarcelación".

De otra parte, el aludido Manual indica lo siguiente:

> […] para lograr un sistema de clasificación funcional, el proceso tiene que ubicar a cada confinado en el programa y en el nivel de custodia menos restrictivo posible para el que el confinado cualifique, sin menoscabar la seguridad y las necesidades de la sociedad, de los demás confinados, y del Personal Correccional. Este concepto de clasificación se logra recopilando datos válidos sobre cada uno de los confinados y usando criterios objetivos para interpretar y aplicar esos datos. Introducción, Manual Núm. 9151, *supra.*

Cónsono con lo anterior, el precitado Manual establece que una "clasificación objetiva" es un proceso confiable y válido mediante el cual se clasifica a los confinados y se les divide en grupos, basándose en varias consideraciones, tales como: la severidad del delito, su historial de delitos anteriores, su comportamiento en instituciones, los requisitos de seguridad

y supervisión, y las necesidades identificables de programas y servicios específicos. *Íd.*, Sección 1. Asimismo, el referido Artículo destaca que un sistema de clasificación objetiva consta de una clasificación inicial y un proceso de reclasificación periódica de cada confinado. *Íd*

La Sección 1 del aludido Manual define la reclasificación como la "Revisión periódica de los confinados en lo que respecta a su progreso como parte del Plan Institucional, así como también su nivel de custodia". A tenor con ello, la Sección 7 indica que la reevaluación de custodia no necesariamente tiene como resultado el cambio en la clasificación de custodia, sino que su función primordial es verificar la adaptación del confinado y prestarle atención a cualquier situación que pudiese surgir. Además, señala que los confinados con clasificación de custodia máxima serán objeto de revisión cada seis (6) meses, una vez cumplan su primer año de sentencia bajo custodia máxima. *Íd.*, Sección 7 (B) (1) (b). Mientras que los confinados con clasificación de custodia mínima y mediana serán revisados cada doce (12) meses. *Íd.*, Sección 7 (B) (1) (a). En lo pertinente a la controversia planteada ante nos, es importante mencionar que el Reglamento Núm. 9151 dispone que, se efectuarán revisiones automáticas no rutinarias cuando haya una convicción del confinado por una violación disciplinaria de Nivel I/Nivel II, según las define el DCR, sólo si el formulario de reclasificación de custodia requeriría un nivel de custodia superior como resultado de la sanción disciplinaria.

Al detallar el proceso de reclasificación, el Manual Núm. 9151 establece que el CCT verificará y estudiará los datos básicos relacionados con la clasificación incluyendo: delitos actuales; sentencias actuales; historial delictivo anterior; órdenes de detención y arresto; cambios en la cantidad de la fianza (sumariados solamente); encarcelamientos previos bajo el DCR; fecha de excarcelación prevista (sentenciados solamente);

récord de conducta disciplinaria de la institución; récord de participación en programas. *Íd.,* Sec. 7 (III) (c) (5) (b).

La determinación del nivel de custodia de un confinado requiere que se realice un balance de intereses. Cruz v. Administración, 164 DPR 341, 352 (2005). Por un lado, se encuentra el interés público de lograr la rehabilitación del confinado, como también mantener la seguridad institucional y general del resto de la población penal; del otro, está el interés del confinado de permanecer en un determinado nivel de custodia. *Íd.* Para lograr esto, al momento de determinar la procedencia de un cambio en el nivel de custodia de un confiando, deberá considerarse una serie de factores subjetivos y objetivos, por lo que resulta indispensable la pericia del DCR. *Íd.*

### III.

En el caso que nos ocupa, el señor Santana recurre de la *Resolución* emitida por el CCT el 11 de marzo de 2025, mediante la cual fue reclasificado al nivel de custodia máxima. Ello por desobediencia a las normas y reglas de la institución. En síntesis, el recurrente señala que el CCT actuó sin jurisdicción al reclasificarlo en cuatro (4) ocasiones en menos de un (1) año. Así pues, razonó que el CCT se extralimitó en aplicar el Reglamento Núm. 9151, *supra*, el cual establece que a los confinados de custodia mínima se les evaluará su clasificación anualmente.

Por su parte, la Oficina del Procurador General en representación de la parte recurrida sostiene que la determinación impugnada, si bien no es resultado del proceso rutinario de reclasificación, se hizo dentro de la autoridad que el Reglamento Núm. 9151 le confiere a la CCT para actuar. De otra parte, la Oficina del Procurador General argumenta en su comparecencia que conforme al cómputo de criterios objetivos contenidos en la *Escala de Clasificación* y dado que la transgresión del señor Santana bastó para que su puntuación en los renglones 1-8 sumara doce (12),

procedía una reclasificación de custodia a máxima. Así expuesto, aclara que la determinación de la CCT está fundamentada en el expediente y, que el recurrente no presentó prueba para rebatir la presunción de legalidad y corrección de dicha *Resolución*.

Conforme el derecho previamente expuesto, el Reglamento Núm. 9151 establece que, los confinados con clasificación de custodia mínima y mediana serán revisados cada doce (12) meses. No obstante, de igual manera el manual añade que, se efectuarán revisiones automáticas no rutinarias cuando, entre otras circunstancias, haya una convicción del confinado por una violación disciplinaria de Nivel I/Nivel II, según las define el Departamento, sólo si el formulario de reclasificación de custodia requeriría un nivel de custodia superior como resultado de la sanción disciplinaria.

La *Resolución* emitida por la CCT el 11 de marzo de 2025, decisión impugnada por el recurrente, determinó que el 1 de enero del año en curso se radicó contra el señor Santana la querella 215-25-001 por "utilización del correo o de la correspondencia para propósitos ilícitos" o su tentativa. Igualmente, allí se estableció que el 4 de marzo de 2025, se celebró la vista en cuanto a este asunto, encontrándosele incurso en violación Nivel I a las normas y reglas de la institución penal. Por otro lado, y según arroja la *Escala de Reclasificación de Custodia*, que acompañó la *Resolución* de la CCT, el señor Santana obtuvo una puntuación de doce (12) en los renglones del 1-8 en la Parte II. Nótese que el nivel de custodia sugerido por dicha escala es de custodia máxima.[4]

Por consiguiente, nos parece que, contrario a lo argüido por el recurrente, la CCT no abusó de su discreción al emitir la decisión impugnada. En contrario, a nuestro juicio la determinación de una revisión no rutinaria efectuada en el caso fue producto de la aplicación por parte de

---

[4] Véase página 21 del Apéndice.

la CCT de las normas y los reglamentos vigentes. Entendemos que dicha actuación no fue irrazonable, arbitraria o caprichosa. La misma goza de una presunción de corrección y legalidad que el recurrente no logró rebatir.

En este caso la totalidad del expediente avala la decisión de reclasificación emitida por el CCT, por lo que el error señalado por el señor Santana no se cometió. Las distintas reclasificaciones efectuadas por el CCT previo a esta última, a las que alude el recurrente como motivo para cuestionar la actuación administrativa, no derrotan la autoridad que la agencia tenía para realizar la reclasificación impugnada.

IV.

Por los fundamentos antes expuestos, confirmamos la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones